UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHARLES GREFER,

                Petitioner,

    v.

PAROLE OFFICER GRANT, S.P.O.
ENGLE, and NYS DOCCS,

                Respondents.

**DECISION AND ORDER**

6:19-CV-06261 EAW

---

## I.    __INTRODUCTION__

*Pro se* petitioner Charles Grefer ("Petitioner") commenced this habeas proceeding pursuant to 28 U.S.C. § 2254 by filing a petition. (Dkt. 1). Prior to Respondents being directed to answer the petition, Petitioner filed an amended petition. (Dkt. 6).[1] The amended petition attacks the constitutionality of the judgment entered against Petitioner on January 9, 2014, in New York State, Onondaga County Court (Fahey, J.), following his guilty plea to second-degree grand larceny and third-degree criminal tax fraud. (*Id.* at 4-6).[2] For the reasons discussed below, Petitioner has not shown he is entitled to habeas

---

[1]    In its Order directing Respondents to answer, the Court stated that the amended petition was the operative pleading and superseded the original petition in all respects. (Dkt. 8 at 1 (citing Fed. R. Civ. P. 15; W.D.N.Y. Loc. Civ. R. 15(a)). Respondents thus were directed to respond to the amended petition only. (*Id.*).

[2]    Unless otherwise noted, citations to page numbers are to the pagination automatically generated by the Court's CM/ECF system and located in the header of each page.

relief.  Therefore, the Court denies the request for a writ of habeas corpus and dismisses the amended petition.

## II.    BACKGROUND

### A.    The Indictments

Onondaga County Indictment No. 2012-1182-1, returned on December 6, 2012, charged Petitioner with second-degree grand larceny in violation of New York Penal Law ("P.L.") § 155.40(1) (count one); second-degree forgery in violation of P.L. § 170.10(1) (counts two, three, four, and six); third-degree grand larceny in violation of P.L. § 155.35 (counts five and seven); and fourth-degree grand larceny in violation of P.L. § 155.30(1) (count eight).  (SR: 32-35).[3]  The charges were based on allegations that between December 2010, and May 2012, Petitioner forged dozens of checks and stole over $383,000 from his former employer, Optimization Consulting, Inc.; forged checks and stole over $3,000 from his employer, Bryant & Stratton College; forged a check and stole approximately $1,000 from Raymour & Flanigan furniture company; and forged a check and stole over $5,000 from GEICO Insurance Co.  (*See id.*; *see also* SR: 66-67 (bill of particulars)).

On April 18, 2013, an Onondaga County grand jury returned Indictment No. 2013-0354-1, charging Petitioner with third-degree criminal tax fraud in violation of New York Tax Law § 1804.  (SR: 556).  This charge was based on Petitioner's alleged failure, on April 17, 2012, to pay more than $17,000 in State taxes on unreported income.  (SR: 556).

---

[3]    Citations to "(SR: )" refer to the Bates-stamped numbers located at the bottom of each page of the state court records filed by Respondents at Dkt. 25-3.

**B.      Suppression Hearing**

Petitioner's attorney, August Nordone, Esq. ("Mr. Nordone" or "defense counsel"),

filed a motion to suppress (SR: 61-62) Petitioner's written statement to police (SR: 51-53).

On March 22, 2013, the parties appeared before Onondaga County Court Judge Joseph E.

Fahey ("Judge Fahey" or "the trial court") for a suppression hearing.   The prosecution

called Detective Gregory Armstrong of the City of Syracuse Police Department.  (3/22/13

Tr. at 6-35).[4]  The defense called Petitioner.  (*Id.* at 37-69).

**1.      Detective Armstrong's Testimony**

Michael Sattler ("Sattler"), the campus director of Bryant & Stratton College ("the

College") in the City of Syracuse, arranged a meeting with Petitioner on August 1, 2012,

to discuss his future employment options at the College.  (*Id.* at 14).  At the time, Petitioner

was suspended from his employment duties while the College investigated his alleged

cashing of a counterfeit payroll check.  (*Id.* at 7, 16).  Sattler notified Detective Armstrong

about the meeting and assented to Detective Armstrong's request to attend.  (*Id.* at 14).

When Petitioner arrived at Sattler's office at around 9:15 a.m. on August 1, 2012,

Detective Armstrong and New York State Police Investigator Gary Darstein introduced

themselves to him.  (*Id.* at 6-7, 15).  Detective Armstrong advised Petitioner that he was

investigating the counterfeit payroll check and asked if Petitioner would be willing to come

to the City of Syracuse Police Department Criminal Investigations Division ("CID") to

discuss the incident.  (*Id.* at 7, 16-17).  Petitioner agreed.  (*Id.* at 16).  During the five-

---

[4]      The state court transcripts were filed by Respondents in one volume at Dkt. 25-4.

minute car ride, Petitioner was not handcuffed and neither of the officers discussed the counterfeit payroll check with him. (*Id.* at 7-8, 18). The officers did not advise Petitioner that he was a target of their investigation. (*Id.* at 17). Detective Armstrong admitted on cross-examination that Petitioner "[a]bsolutely" was the target of the investigation and, at the time of the meeting, a search warrant was being executed at his residence. (*Id.* at 17-18).

After they arrived at the CID, Detective Armstrong brought Petitioner to an interview room at around 9:30 a.m. and read *Miranda* warnings to him from a preprinted waiver form. (*Id.* at 8-9, 24). After reading aloud each individual right covered by *Miranda* warnings, Detective Armstrong asked Petitioner if he understood the right he was waiving; each time, Petitioner replied, "yes." (*Id.* at 9). Petitioner also read the form containing *Miranda* warnings to himself and placed his initials next to each constitutional right listed on the form. (*Id.* at 10; *see also* SR: 50 (waiver)). Petitioner then signed the form. (*Id.* at 10; *see also* SR: 50).

Detective Armstrong and Investigator Darstein spoke with Petitioner for a couple hours regarding the investigation; they did not take a statement from him immediately. (*Id.* at 10-11). Petitioner said that he had no problem with Detective Armstrong memorializing his statement in writing. (*Id.* at 11). Detective Armstrong typed up the statement and read it aloud to Petitioner, who also reviewed it himself and signed it, confirming it was true and correct. (*Id.* at 11-12, 13; *see also* SR: 51-53 (statement)). At no time did Petitioner ask to stop the interview or leave the room. (*Id.* at 12). There was no indication that Petitioner was under the influence of alcohol or drugs at the time he spoke to the officers.

(*Id.* at 12-13).   On cross-examination, Detective Armstrong did not recall Petitioner mentioning that the room was very cold and asking for the heat to be raised.   (*Id.* at 23). Petitioner did ask for a glass of water which Detective Armstrong provided to him.   (*Id.*).

### 2.   Petitioner's Testimony

Petitioner testified that on the evening of July 31, 2012, Sattler called to tell him that the check issue had been resolved and Petitioner would be resuming his job.   (*Id.* at 38).   When Petitioner arrived at the College on the morning of August 1, 2012, he was told he needed to meet with Sattler briefly before starting his day.   (*Id.*).   Upon entering Sattler's office, he was greeted by Detective Armstrong and Investigator Darstein.   (*Id.* at 39). Detective Armstrong commented to Petitioner that it appeared as though Petitioner "had some identity theft issues" and that he needed Petitioner to come down to the police station and make a statement to that effect.   (*Id.*).   Petitioner admitted that he voluntarily accompanied the officers to the station, that he was not handcuffed, and that he was not given any indication he was under arrest.   (*Id.* at 39-40).

Petitioner testified that during the interview, he "[r]epeatedly" told Detective Armstrong that he wanted to leave because he "felt like [he] needed to clarify the situation" and he "did not want to remain there if . . . [he] was not required [to do so]."   (*Id.* at 40-41).[5]   Due to the "extreme coldness" of the room, he tried to open the door to let out some of the cold air, but the door was locked.   (*Id.* at 41).   Petitioner stated that the outside temperature was 96 degrees, but the room was "easily below 50 degrees."   (*Id.*).   When he

---

[5]     Petitioner did not testify as to what, if anything, Detective Armstrong said in response to his requests to leave.

"repeatedly" asked to have the thermostat adjusted, the officers responded "that they would see what they could do but nothing was done." (*Id.* at 41-42). He also asked to be moved to a different room, but that request was denied. (*Id.* at 42). When Petitioner asked for a beverage, Detective Armstrong said that he would get one but never did so. (*Id.*).

Petitioner claimed he was never verbally advised of *Miranda* warnings. (*Id.* at 43-44). He was not presented with the *Miranda* waiver form to sign until after his written statement was memorialized. (*Id.* at 42-43). Petitioner estimated that he was in the interview room with the officers for seven to eight hours. (*Id.* at 44).

## C.   Arraignment on the Second Indictment and the Order Denying Suppression of Petitioner's Statement

On April 22, 2013, Petitioner appeared before Judge Fahey for arraignment on the tax fraud case (Indictment No. 2013-0354-1). (4/22/13 Tr. at 2). Judge Fahey also provided the parties with his written decision denying the motion to suppress Petitioner's statements. (*Id.*; *see also* SR: 44-47 (decision)). More specifically, Judge Fahey found that:

> the defendant was not in custody during his initial contact with the police when he voluntarily accompanied Det. Armstrong and Inv. Darstein to CID on August 1, 2012. The Court need not determine if, or when, the defendant was thereafter in custody prior to his arrest because, immediately upon arrival at CID and before any interrogation, Armstrong administered adequate *Miranda* warnings to the defendant and the defendant made a knowing and voluntary waiver of his rights.
>
> The defendant thereafter did not invoke either his right to silence or his right to counsel during the interview. The police did not use or threaten the use of physical force upon the defendant or any other person, nor did they engage in any improper conduct which impaired the defendant's physical or mental condition to the extent of undermining his ability to make a choice whether or not to make a statement. The police did not make any promises or

statements of fact which created a substantial risk that the defendant might falsely incriminate himself.

The statements made by the defendant to Det. Armstrong and Inv. Darstein were not taken in violation of such rights as he may derive from the constitution of this state or of the United States. . . .

(SR: 46-47).

### D.     The June 20, 2013 Appearance

On June 20, 2013, the day after Petitioner's motion to suppress the physical evidence seized from his car, home, and computers was denied (SR: 560-62), Judge Fahey conducted a calendar appearance in Petitioner's tax fraud case (Indictment No. 2013-0354-1).   Immediately after Petitioner's case was called, Mr. Nordone asked Judge Fahey whether he had "receive[d] [his] most recent letter" which "concern[ed] proceedings before Judge Merrill early on in this case" and "was an add on to [his] most recent set of motions relative to the tax case."  (6/20/13 Tr. at 2).  Judge Fahey replied that he did not know what Mr. Nordone was talking about.  (*Id.*).  Mr. Nordone replied,

I will tell you this:  The transcript – we ordered the transcript of that proceeding and it appears that an offer was made by Judge Merrill to settle this.  And Judge Merrill, of course, was, we believe, sitting as a superior court judge because he is designated.  So we are making a motion for this Court to compel this Court to offer the offer that Judge Merrill did, which was shock probation.

(*Id.*).  Judge Fahey noted that he had not received anything from the defense and did not have a response from the prosecution.  (*Id.* at 2-3).  He commented that if he received something from Mr. Nordone, and the prosecution had been served, he would have "something to deal with with respect to the motion. . . ."  (*Id.* at 3).  The assistant district

attorney appearing on behalf of the prosecution did not say anything throughout this appearance.

### E.    The Plea

On August 20, 2013, the parties appeared before Judge Fahey on Indictment Nos. 2012-1182-1 and 2013-0354-1, the counterfeit check case and the tax fraud case, respectively.  Judge Fahey previously had informed the parties that it would be "the last day" to work out a plea agreement to resolve both cases.  (8/20/13 Tr. at 2).  Noting that they "ha[d] tap danced around this case going back to April," Judge Fahey stated that it was time to "fish or cut bait."  (*Id.*).  Mr. Nordone indicated that Petitioner wanted "just a short period of time to think about it."  (*Id.*).  Judge Fahey said he was willing to allow defense counsel "a short adjournment to talk to [Petitioner] this morning" but refused to adjourn the case any further.  (*Id.* at 2-3).  Judge Fahey offered to "explain the deal to [Petitioner] from here, it's not hard to do[.]"  (*Id.* at 3).  Judge Fahey suggested that Mr. Nordone and Petitioner go "into the attorney room, sit down have a talk."  (*Id.*).  Mr. Nordone assented, and Petitioner's case was recessed until the second calendar call.  (*Id.*).

Once back on the record, Judge Fahey explained the current plea offer as follows: Petitioner would enter a guilty plea to second-degree grand larceny and third-degree criminal tax fraud in satisfaction of Indictment Nos. 2012-1182-1 and 2013-0354-1, respectively, in return for a sentence promise of three and one-third to ten years' imprisonment.  (*Id.* at 3-4).  Judge Fahey then confirmed that Petitioner wished to resolve his case by accepting the terms of the proposed plea offer.  (*Id.* at 4).

Petitioner denied that any promises or statements had been made to him regarding the guilty plea other than what had been said in court that day. (*Id.*). Judge Fahey separately articulated the following rights Petitioner was giving up by pleading guilty: the right to a trial, the right to require the prosecution to call witnesses and produce evidence proving beyond a reasonable doubt that he committed the crimes of second-degree grand larceny and third-degree criminal tax fraud, the right to have defense counsel confront and cross-examine witnesses on his behalf, the right to call witnesses and present proof in support of his defense, and the right to testify on his own behalf. (*Id.* at 5-6). When asked whether he understood each, separately articulated right, Petitioner replied "[y]es" each time. (*Id.*). Petitioner confirmed that he understood that by giving up those rights and pleading guilty, it was "the same" as if Judge Fahey or a jury found him guilty. (*Id.* at 6).

Petitioner stated he understood he was pleading guilty to felonies and that if he were to be found guilty of another felony within the next ten years, "there will be a mandatory state prison sentence and the punishment will be about twice as bad as what it would normally be." (*Id.* at 6-7).

Petitioner stated he understood he was giving up his right to appeal, which "mean[t] that if there had been any mistakes, errors[,] or omissions made in this court they'll not be reviewed or corrected by any higher court." (*Id.* at 7). Petitioner agreed that he was "prepared to admit" that between December 2010 and May 2012, he stole property valued at $383,000 from Optimization Consulting, Inc. (*Id.* at 7-8). Petitioner then pleaded "[g]uilty" to second-degree grand larceny. (*Id.* at 8). Petitioner also agreed that he was "prepared to admit" that on April 17, 2012, with the "intent to evade any tax due or defraud

the state," he "paid in excess of $10,000 less than the tax liability that was due" over a "period of not more than a year." (*Id.*). Petitioner then pleaded "[g]uilty" to third-degree tax fraud. (*Id.*). Petitioner was released pending sentencing. (*Id.* at 8-9).

### F.    Sentencing

On January 9, 2014, the parties appeared for sentencing. Judge Fahey sentenced Petitioner in accordance with the terms of the plea agreement to three and one-third to ten years' imprisonment on the grand larceny conviction to be served concurrently with two and one-third to seven years' imprisonment on the criminal tax fraud conviction. (1/09/14 Tr. at 3-4). The sentence also included restitution orders in favor of the victims. (SR: 036-041; 558-59).

### G.    Post-Judgment Proceedings in State Court

#### 1.    Direct Appeal

Represented by new counsel, Piotr Banaszak, Esq. ("Mr. Banaszak" or "appellate counsel"), Petitioner pursued a direct appeal as to both judgments of conviction. (SR: 1-607). In the first appeal ("appeal no. 1"), Petitioner attacked the second-degree grand larceny conviction (Indictment No. 2012-1182-1, Index No. 2012-1450); in the second appeal ("appeal no. 2"), he challenged the third-degree criminal tax fraud conviction (Indictment No. 2013-0354-1, Index No. 2013-0400). Appellate counsel urged reversal on the following grounds: the waiver of the right to appeal was invalid because the colloquy did not establish Petitioner's understanding that the right to appeal is separate and distinct from the other rights automatically forfeited upon a guilty plea; the ten percent surcharge was erroneous absent any actual showing that the collection costs of the restitution would

exceed five percent; the restitution order in favor of GEICO was erroneous because the company sustained no monetary loss; and the sentence was unduly harsh and severe.  (SR: 002, 005, 008-022).  The prosecution filed a brief in opposition.  (SR 608-21).

On April 19, 2016, the Appellate Division, Fourth Department, of New York State Supreme Court ("Appellate Division"), consolidated both appeals.   (SR: 007).   In memorandum decisions entered on April 28, 2017, the Appellate Division unanimously agreed with Petitioner that the trial court's minimal inquiry was insufficient to ensure that he made a knowing and voluntary choice to waive his right to appeal.  *People v. Grefer*, 149 A.D.3d 1542, 1542-43 (4th Dept. 2017) (appeal no. 1) ("*Grefer I*"); (SR: 622-23); *People v. Grefer*, 149 A.D.3d 1543 (4th Dept. 2017) (appeal no. 2) ("*Grefer II*") (affirming conviction based on the "[s]ame memorandum" as in appeal no. 1) (SR: 624).  Further, the Appellate Division found there was no basis in the record to conclude that the trial court ensured Petitioner's understanding of the waiver of the right to appeal as separate and distinct from the rights automatically forfeited by a guilty plea.  *Grefer I*, 149 A.D.3d at 1542-43; *Grefer II*, 149 A.D.3d at 1543.   Finally, the Appellate Division summarily rejected the contention, raised in both appeals, that the sentence was unduly harsh and severe.  *Grefer I*, 149 A.D.3d at 1543; *Grefer II*, 149 A.D.3d at 1543.

Petitioner sought leave to appeal as to all issues in the appellate briefs.  (SR: 625-26).  The New York Court of Appeals denied leave to appeal in both appeals on July 25, 2017.  *People v. Grefer*, 29 N.Y.3d 1091 (2017) (appeal no. 1) (SR: 628); *People v. Grefer*, 29 N.Y.3d 1092 (2017) (appeal no. 2) (SR: 629).

### 2.      Motion to Vacate the Judgment

On or about July 7, 2017, while his direct appeal was pending before the Appellate Division, Petitioner filed a *pro se* motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10(1)(h) ("440 motion") in Onondaga County Court.  (SR: 630-54).  Petitioner chiefly asserted that "[d]efense counsel was defici[e]nt in allowing the accused/client to accept an offer of 10 years['] incarceration when a viable motion to honor a plea offer of probation was still to be decided."  (SR: 634).  In support of the 440 motion, Petitioner submitted a letter-motion from Mr. Nordone dated June 20, 2013 ("the motion to enforce"), and faxed to Judge Fahey on June 24, 2013.  (SR: 642-44). In the motion to enforce, defense counsel referred to an October 17, 2012 appearance in Syracuse City Court during which Judge Jeffrey R. Merrill "upon information and belief, . . . was acting as a Superior Court Judge."  (SR: 642).  According to Mr. Nordone, Judge Merrill had "made a sentence promise of no worse than shock probation," and Petitioner "indicated his acceptance of that offer."  (*Id.*).   In addition, Mr. Nordone asserted, "a representative of the District Attorney's Office agreed to include all additional charges in this disposition." (*Id.*).  Mr. Nordone requested that Judge Fahey "[h]onor" Judge Merrill's "offer of Shock Probation in this matter."  (*Id.*).

In opposition to the 440 motion, Onondaga County Assistant District Attorney James P. Maxwell ("ADA Maxwell") filed an affirmation with exhibits.  (SR: 655-79).  As an initial matter, ADA Maxwell asserted Petitioner's complaints about Mr. Nordone should not be credited because Petitioner waited until after his death on August 9, 2016, to bring the 440 motion.  (SR: 661 (referring to SR: 665 (obituary))).  With regard to the alleged

offer of "shock probation," ADA Maxwell averred that based upon a review of the prosecution's file for the two indictments at issue, there never was such a plea offer.  (*See* SR: 661-62).  ADA Maxwell explained that any discussion of "shock probation" occurred in connection with certain misdemeanor drug charges and was never contemplated in the felony cases.  The drug charges stemmed from an incident at the conclusion of the August 1, 2012 interview with Petitioner at the CID.  After Detective Armstrong arrested Petitioner on charges of first-degree identity theft, second-degree forgery, and third-degree grand larceny, all under case number DR# 12-366351, the booking officers inventoried Petitioner's personal effects.  (SR: 661).  During the inventory, the officers recovered a "hypo kit" that included two hypodermic needles and a white powder that was indicative of heroin.  (*Id.*).  Based on these items, Petitioner was charged under case number DR# 12-378538 with seventh-degree criminal possession of a controlled substance and criminally possessing a hypodermic instrument.  (*Id.*).

To show that the prosecution always contemplated some amount of prison time in connection with the two felony indictments, ADA Maxwell submitted a letter from Onondaga County Assistant District Attorney Beth Van Doren ("ADA Van Doren") dated August 8, 2012, to Mr. Nordone.  (SR: 667).  In that letter, ADA Van Doren offered a disposition in "DR# 12-366351 & 12-531070," the two case numbers related to the two felony indictments, which would require Petitioner to plead guilty to second-degree forgery in exchange for a sentence of three to nine years in prison and a restitution order.  (*Id.*). ADA Maxwell also submitted a memo from ADA Van Doren to the "SCTC [i.e., Syracuse Community Treatment Court] ADA" dated August 30, 2012, regarding news of

Petitioner's impending release from custody that day. (SR: 669). ADA Van Doren commented, "At no time did I consent to this, and I communicated that to defense attorney Gus Nordone." (*Id.*). ADA Van Doren reiterated that she had "offered 3-9 [years' imprisonment] to cover all cases and did not offer SCTC." (*Id.*).

ADA Maxwell also cited to two written notations by ADA Van Doren on documents in the prosecution's file, but it does not appear that those notations were copied and submitted as attachments to his affirmation. In one notation, dated August 17, 2012, ADA Van Doren told Mr. Nordone to "forget" about resolving the felony cases through Petitioner's participation in drug court. (SR: 661). In the other notation, dated September 4, 2012, ADA Van Doren indicated that she had been told by Mr. Nordone that Petitioner did not want to accept her proposed disposition of the felony charge which required a three-to-nine-year term of imprisonment. (SR: 661-62).

To refute the assertion that the October 17, 2012 appearance in Syracuse City Court before Judge Merrill had anything to do with the felony indictments, ADA Maxwell attached two letters (SR: 676-77, 679) from then-Supervising Syracuse City Court Judge Stephen J. Dougherty. The letters were in response to Petitioner's attempts to obtain copies of the minutes from that appearance. Judge Dougherty "confirm[ed] that no action was taken on [Petitioner's] felony case in Syracuse City Court on October 17, 2012." (SR: 679; *see also* SR: 677). Rather, the October 17, 2012 appearance "was under Docket No. 2012-07423 (DR# 12-378538)" regarding the misdemeanor charges of possession of a hypodermic instrument and criminal possession of a controlled substance. (SR: 676). Since the misdemeanor charges under DR# 12-378538 eventually were dismissed and the

records sealed by Judge Merrill on December 20, 2013, Judge Dougherty concluded that the minutes of the October 17, 2012 appearance could not be disclosed.  (*Id.*).  Accordingly, he denied Petitioner's motion.  (*Id.*).

In sum, ADA Maxwell argued, all of the documentary evidence conclusively refuted Petitioner's assertion that ADA Van Doren ever offered a disposition involving only "shock probation" to resolve the two felony indictments against him.  (SR: 662-63).

Petitioner filed a reply along with a copy of the documents in Mr. Nordone's case file.  (SR: 680-792).  Included as part of that file was a copy of the transcript of the October 17, 2012 appearance before Syracuse City Court Judge Merrill (SR: 705-07), regarding Docket No. 2012-07423 (DR# 12-378538).  Judge Merrill stated he needed an offer that day, to which the assistant district attorney (not ADA Van Doren) replied that "the People are looking for a plea."  (SR: 706).  The following colloquy ensued:

> MR. NORDONE: What we have here [sic] because of course we have possession of huge amounts of felonies that are lurking as well as being filed against my client.
>
> THE COURT: Well what are those charges?  Okay[,] he's got a bunch of – all right.  Right now it's a plea and shock probation is the offer to him.  He's got a ton of stuff with [ADA] Beth [Van Doren]?
>
> MR. NORDONE: Beth.  The offer from Beth is plea and agree to nine years.
>
> THE COURT: All right.

(SR: 706).  Nothing further was said about either the plea to "shock probation" or the "offer from Beth . . . to nine years."  Judge Merrill then set December 3, 2012, at 2 p.m. for the filing of motions in the drug case (i.e., Docket No. 2012-07423) and reiterated that currently "[t]he offer is a plea no worse than shock probation."  (SR: 707).  The assistant

district attorney said nothing else except to ask for confirmation of the date and time of the next appearance. According to Petitioner, the October 17, 2012 transcript proved that the "shock probation" plea offer also covered all pending and future felony charges.[6]

In a written decision and order, Onondaga County Court Judge Stephen J. Dougherty (the "440 court") denied the motion. (SR: 793-97). More specifically, the 440 court ruled that defense counsel's alleged failure to accept the plea offer to "shock probation" was procedurally barred pursuant to C.P.L. § 440.10(2)(c) because it was record-based and should have been raised on direct appeal. (SR: 794). The 440 court alternatively rejected the claim on the merits, finding that there was no evidence that the alleged plea offer existed. (SR: 795-96). In particular, the 440 court agreed with the prosecution that the October 17, 2012 court appearance "dealt only with the defendant's drug charges under DR # 12-378538, and not any other charges." (SR: 796). The 440 court elaborated:

> The fact that the People offered a 3 – 9 year indeterminate term of imprisonment on August 8, 2012, which the defendant rejected on September 4, 2012, and opposed the defendant's release by SCTC on his misdemeanor drug case on August 30, 2012, prior to his October 17, 2012 court appearance on the misdemeanor drug case, demonstrates the absurdity of defendant's claim that he received an offer to resolve all of his pending and future charges with no more than a sentence of shock probation on October 17, 2012.

(SR: 796). Characterizing the claim as "simply incredible and not worthy of belief," the 440 court denied it without a hearing. (*Id.*).

---

[6]   It bears noting that as of October 17, 2012, Petitioner had not yet been indicted in connection with his failure to pay taxes on the unreported income he derived from cashing the counterfeit checks.

Finally, the 440 court rejected as meritless Petitioner's allegations of ineffective assistance of counsel.  (SR: 797).  The 440 court found that Mr. Nordone's alleged failure to have Judge Fahey "honor" Judge Merrill's alleged offer of "shock probation" on the misdemeanor drug case to resolve all pending and future felony cases "did not result in a denial of meaningful representation . . . since no such offer ever existed."  (*Id.*).

Petitioner's application for leave to appeal (SR: 798-820) was denied by the Appellate Division on September 13, 2018.  (SR: 824).

## H.     The Federal Habeas Proceeding

On April 2, 2019, Petitioner filed a petition asserting that he was incarcerated at the Monroe County Jail (the "Jail") pursuant to "NYS DOCCS Parole Warrant 787787 and an associated Violation of Parole Release Report."  (Dkt. 1 at 1).  He claimed that both documents were "fraudulent" and based on "false statements" made by Respondent PO Grant and "confirmed/approved" by Respondent SPO Engle.  (*Id.*).  Asserting that he had, in fact, complied with all conditions of his parole agreement, Petitioner requested an order for his immediate release from the Jail.

Prior to Respondents being ordered to answer the petition, Petitioner submitted another document dated July 17, 2019, which was docketed as an amended petition.  (Dkt. 6).  At that time, Petitioner still was confined at the Jail.  In the amended petition, Petitioner challenged his convictions for second-degree grand larceny and third-degree criminal tax fraud and did not mention the parole violator's warrant.  (*Id.* at 4).  More particularly, Petitioner asserted that (1) his waiver of the right to appeal was invalid ("Ground One"); (2) Detective Armstrong coerced him into confessing by holding him in a locked, very cold

room and denying him food, water, and access to the bathroom ("Ground Two"); (3) the searches of his automobile, home, and personal possessions were unreasonable ("Ground Three"); (4) defense counsel and the trial court coerced him into pleading guilty to an offer that involved prison time when there was an outstanding offer to only "shock probation" ("Ground Four"); (5) his arrest was unlawful insofar as he was kept locked in a cold room and denied food, water, and access to the bathroom until he signed a confession ("Ground Five"); (6) he was denied a timely grand jury and the opportunity to testify before the grand jury ("Ground Six"); and (7) defense counsel was ineffective ("Ground Seven").

As directed by the Court (Dkt. 8), Respondents filed a response to the amended petition (Dkt. 25), along with a memorandum of law (Dkt. 25-1), the state court records (Dkt. 25-3), and the state court transcripts (Dkt. 25-4).  Respondents also manually filed a CD containing an audio recording of the October 17, 2012 Syracuse City Court appearance before Judge Merrill on the misdemeanor drug case.

Petitioner filed various motions seeking (1) a default judgment against Respondents due to their purported failure to answer on time (Dkt. 9); (2) withdrawal of the motion for default judgment (Dkt. 10); (3) free copies of his filings (Dkt. 12); (4) appointment of counsel (Dkt. 19); (5) reconsideration of the denial of his request for a Clerk's entry of default (Dkt. 28); and (6) an extension of time to file a reply (Dkt. 34).  The Court denied the motions for default judgment, reconsideration, and appointment of counsel.  (Dkt. 36 at 3-5, 6).  The motion to withdraw was denied as moot.  (*Id.* at 4, 6).  The Court granted the motion for free copies to the extent it directed the Clerk of Court to mail Petitioner a copy of the amended petition.  (*Id.* at 4, 6).  Finally, the Court granted Petitioner an

extension of time to reply to Respondents' memorandum of law. (*Id.* at 6). Petitioner filed

two additional requests for extensions of time (Dkt. 37, 39), which the Court granted (Dkt.

38, 40). Petitioner ultimately did not file a reply.

### III.   <u>JURISDICTION</u>

As a preliminary matter, neither Respondents nor Petitioner have addressed the

issue of subject matter jurisdiction. As federal courts are courts of limited jurisdiction,

they may not decide cases over which they lack subject matter jurisdiction. *Lyndonville*

*Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). Unlike personal

jurisdiction, subject matter jurisdiction is not waivable. *Id.* The Court therefore has a

continuing obligation to ensure that it has subject matter jurisdiction over the cases before

it and may raise the issue *sua sponte. Id.* If the Court determines it lacks subject matter

jurisdiction, it must dismiss the action. *Id.* at 700-01.

### A.   **"In Custody" Requirement**

A federal court's jurisdiction to consider a petition for a writ of habeas corpus is

limited to petitions filed on "behalf of a person in custody pursuant to the judgment of a

State court only on the ground that he is in custody in violation of the Constitution or laws

or treaties of the United States." 28 U.S.C. § 2254(a). Thus, § 2254(a)'s "jurisdictional

requirement has two components—'custody' that arises 'pursuant to the judgment of a state

court' that is under attack." *Piasecki v. Ct. of Common Pleas, Bucks Cnty., PA*, 917 F.3d

161, 165-66 (3d Cir. 2019) (quoting 28 U.S.C. § 2254(a)). In other words, "the habeas

jurisdictional provision requires that the petitioner be subject to a 'non-negligible restraint

on physical liberty' that is a '*direct* consequence of [the] conviction' being challenged."

*Id.* at 166 & n.22 (alteration in original) (emphasis supplied) (quoting *Stanbridge v. Scott*, 791 F.3d 715, 719 (7th Cir. 2015)).

A non-negligible restraint on physical liberty under § 2254(a) may exist even if the petitioner is not physically confined.  *See Jones v. Cunningham*, 371 U.S. 236, 239 (1963) ("[T]he use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody.").  A petitioner on parole, for example, is "in custody" within the meaning of § 2254(a), because the parole restrictions "significantly restrain [the] petitioner's liberty to do those things which in this country free men [and women] are entitled to do." *Id.* at 243; *see also Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006) ("Post-release supervision, admitting of the possibility of revocation and additional jail time is considered to be 'custody.'"); *Sammons v. Rodgers*, 785 F.2d 1343, 1345 (5th Cir. 1986) (per curiam) (unexpired suspended sentence); *United States ex rel. B. v. Shelly*, 430 F.2d 215, 217 n.3 (2d Cir. 1970) (probation).

The fact that a petitioner's sentence expires while the petition is pending does not affect subject matter jurisdiction so long as the petitioner was "'in custody' when the application for habeas corpus [was] filed." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). Once a petitioner's sentence has "completely expired," *Maleng v. Cook*, 490 U.S. 488, 492 (1989), the criminal judgment is no longer subject to challenge by means of a federal habeas corpus petition, for "the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of [28 U.S.C. § 2254(a)]." *Id.*

At the time Petitioner filed the amended petition, he apparently had completed the custodial portion of his sentence and had been released to parole supervision.[7]  Following an alleged parole violation on an unspecified date, he was detained on a parole warrant at the Jail.  (Dkt. 1 at 1).  At the time he commenced this proceeding, his physical custody arose from the Division of Parole's issuance of the parole warrant; however, there is no indication that his parole had been revoked at the time he filed the amended petition.[8]

"A convicted person released from incarceration on parole continues to serve his or her sentence while on parole . . . ."  *Oriole v. Saunders*, 66 A.D.3d 280, 281 (1st Dep't 2009) (citing N.Y. Penal Law § 70.40(l), (3)(a)).  Petitioner's sentence in connection with the underlying conviction thus had not expired at the time he filed the amended petition. The Court concludes that Petitioner satisfied the "in custody" requirements with regard to the amended petition.  *Cf. Charnock v. Herbert*, 60 F. Supp. 2d 91, 98 (W.D.N.Y. 1999) (finding that the petitioner was not "in custody" under § 2254(a) where, although he was incarcerated pursuant to a conviction for criminal possession of a forged instrument at the time he filed the petition, he did not show that "he was indicted, sentenced, or incarcerated

---

[7]     A search of Petitioner's DIN (14B0204) on the "Incarcerated Lookup" service available on the website maintained by the New York State Department of Corrections and Community Supervision ("DOCCS") indicates that Petitioner's parole eligibility date was November 11, 2016.  *See https://nysdoccslookup.doccs.ny.gov/* (last accessed Sept. 18, 2023).  It does not state when Petitioner first was released to parole.  The date he most recently was received into DOCCS' custody was October 11, 2022.

[8]     The Court was unable to find any information regarding the outcome of the parole violation proceeding.  DOCCS' website indicates that Petitioner was re-released to parole supervision on November 23, 2022.  *See https://nysdoccslookup.doccs.ny.gov/* (last accessed Sept. 18, 2023).

on the charge of unlawful imprisonment to which the petition refer[red];" and the forged instrument conviction was not "positively and demonstrably related" to the unlawful imprisonment charge (quoting *Carter v. Procunier*, 755 F. 2d 1126, 1129 (5th Cir. 1985)); *Carter v. Nassau Cnty. Ct.*, No. 91 CV 3260, 1992 WL 79318, at *1 (E.D.N.Y. Apr. 9, 1992) (finding that the petitioner was not "in custody" under § 2254(a) where, at time of filing, he was on parole based on a conviction different from the convictions attacked in the petition, meaning that his current custody was not related to the challenged convictions).

## B.    Mootness

Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to cases that present a "case or controversy."  *Spencer v. Kemna*, 523 U.S. 1, 7 (2002).  "Thus, where the issues presented by a party in an action are no longer 'live,' or the party lacks a legally cognizable interest in the outcome, the federal action is properly dismissed as moot."  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).  "[T]o satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury, which is likely to be redressed by a favorable judicial decision."  *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (citation omitted).  "Unlike the 'in custody' requirement, mootness is not fixed at the time of filing but must be considered at every stage of the habeas proceeding."  *Nowakowski v. New York*, 835 F.3d 210, 217-18 (2d Cir. 2016).

Here, as discussed above, Petitioner has not finished serving the parole portion of his sentence.  Even if he had, "[a] criminal case does not necessarily become moot when

the convict finishes serving the sentence." *Mercurris*, 192 F.3d at 293.  As long as "there

exists 'some concrete and continuing injury' or 'collateral consequence' resulting from the

conviction," *id.* (quoting *Spencer*, 523 U.S. at 7), "the case will remain a live case or

controversy," *id.*   Because Petitioner challenges the validity of his underlying felony

convictions, collateral consequences are presumed to exist, regardless of Petitioner's

detention status.  *See*, *e.g.*, *Burch v. Millas*, 663 F. Supp. 2d 151, 157 (W.D.N.Y. 2009)

(where the petitioner challenged the underlying felony conviction that led to his detention,

the presumption of collateral consequences existed, notwithstanding the petitioner's

completion of his sentence (citing *Spencer*, 523 U.S. at 7-8)).  Thus, the amended petition

presents a justiciable controversy amenable to habeas review by this Court.

## IV.   <u>STANDARD OF REVIEW</u>

"The statutory authority of federal courts to issue habeas corpus relief for persons

in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*, 562 U.S. 86, 97

(2011).  AEDPA "revised the conditions under which federal courts may grant habeas relief

to a person in state custody."  *Kruelski v. Connecticut Superior Ct. for Jud. Dist. of*

*Danbury*, 316 F.3d 103, 106 (2d Cir. 2003).  Now, under § 2254(d), a federal court "shall

not . . . grant[ ]" an application for a writ of habeas corpus "with respect to any claim that

was adjudicated on the merits in State court proceedings unless the adjudication of the

claim—(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the

United States"; or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In addition, a state court's factual findings are entitled to a presumption of correctness which only may be rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). The habeas court "may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." *Id.* (citing *Williams*, 529 U.S. at 407-08). Section 2254(d)'s standard for reviewing claims adjudicated on the merits by state courts is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam).

## V.   **EXHAUSTION**

### A.   **Legal Principles**

"Before a federal court may grant habeas relief to a prisoner in state custody, the prisoner must exhaust his or her state court remedies." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(3), (c)). In general, the exhaustion requirement is satisfied "when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state

court (after preserving it as required by state law in lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Att'y Gen. of State of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001) (citing *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)).

When a petitioner has no available means of exhausting claims in state court, they will be "deemed exhausted." *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991). "However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence," *Gray v. Netherland*, 518 U.S. 152, 162 (1996), and renders the claim procedurally defaulted, *id.*  Habeas review of such a claim is unavailable unless the petitioner "show[s] cause for the default and prejudice, or demonstrate[s] that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991)).

### B.     Grounds Two, Three, and Five

In Ground Two, Petitioner asserts that his confession was coerced because the interview room door at the CID was locked from the outside, the room itself was uncomfortably cold, and the officers refused to provide him food, water, or access to the bathroom until he confessed.  (Dkt. 6 at 5).  In Ground Five, Petitioner recites the same factual allegations concerning his interview with the police and contends that he was illegally held at the CID (i.e., "unlawful[ly] arrest[ed]") until he confessed.  (*Id.*).  In Ground Three, Petitioner asserts that the search warrants executed on his car, home, and

computers, and the resultant seizures of tangible evidence, violated the Fourth Amendment. (*Id.* at 5).

As Respondents note, Petitioner only raised these contentions in motions to suppress at the trial court level; he did not reassert them on direct appeal. (Dkt. 25-1 at 18, 20, 22-23; *see also* SR: 061-063 (omnibus motion)). Respondents argue that because a defendant in New York State is only entitled to one direct appeal,[9] Grounds Two, Three, and Five must be deemed exhausted and procedurally defaulted. (*Id.*).

Respondents are correct that Petitioner has used the one direct appeal to which he is entitled. *See*, *e.g.*, *Colon*, 2009 WL 2002036, at *6 n.4. Furthermore, Petitioner faces "an absence of available State corrective process," 28 U.S.C. § 2254(b)(1)(B)(i), for exhausting Grounds Two, Three, and Five. If Petitioner returned to state court and filed a C.P.L. § 440.10 motion, he would face a mandatory dismissal of Grounds Two, Three, and Five, as they are based solely on the trial record. *See* N.Y. Crim. Proc. Law § 440.10(2)(c) (mandating that the court dismiss claim if "sufficient facts appear on the record of the

---

[9]      "By statute, New York law used to specifically provide for only a single application for direct review." *Cunningham v. Conway*, 717 F. Supp. 2d 339, 365 (W.D.N.Y. 2010) (citing *Spence v. Sup't., Great Meadow Corr. Fac.*, 219 F.3d 162, 170 (2d Cir. 2000) (relying on former N.Y. Ct. App. Rule § 500.10(a)). Rule 500.10(a) of the New York Rules for the Court of Appeals has since been amended, and the new rule addressing criminal leave applications, Rule 500.20, does not specifically state that there can be only one application for leave to appeal. *Colon v. Connell*, No. 07 Civ. 7169(BSJ)(JCF), 2009 WL 2002036, at *6 n.4 (S.D.N.Y. July 9, 2009) (citing N.Y. Ct. App. Rule 500.20). That said, "such a restriction may be inferred," since "[b]oth Rule 500.20(d) and CPL § 460.10(5) provide a 30-day window for any such application to be filed; this time limit would be meaningless were multiple applications permitted." *Id.* Moreover, Rule 500.20(d) "states that a request for reargument or reconsideration may not raise any new points, implying that a wholly new request for leave to appeal would be impermissible." *Id.*

proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion," but "no such appellate review or determination occurred owing to the defendant's . . . unjustifiable failure to raise such ground or issue upon [the] appeal").  Accordingly, Grounds Two, Three, and Five must be deemed exhausted because Petitioner no longer has remedies available in the New York State courts.  The procedural bar to exhaustion also renders Grounds Two, Three, and Five procedurally defaulted.

Ineffective assistance of counsel may constitute cause for a petitioner's failure to pursue a constitutional claim; however, in order to constitute cause, counsel's ineffectiveness must itself rise to the level of a constitutional violation.  *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (stating that "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is itself an independent constitutional claim") (emphasis in original).

As discussed below, Petitioner's claims of ineffective assistance are contradicted by the record and are wholly meritless.  Therefore, Petitioner cannot rely on defense counsel's alleged ineffectiveness as "cause" for the default of the claims in Grounds Two, Three, and Five.  The absence of "cause" obviates the need to consider whether "prejudice" exists.  *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [the petitioner] showed prejudice.").

Petitioner likewise has not attempted to demonstrate that he is actually, factually innocent such that a fundamental miscarriage of justice will occur if this Court does not review the merits of the procedurally barred claims in Grounds Two, Three, and Five. Even disregarding Petitioner's admission of criminal culpability at his plea allocution, made under oath in open court, the Court finds that the record conclusively demonstrates Petitioner's guilt of the charges of which he was convicted. Therefore, he cannot fulfill the fundamental miscarriage of justice exception.

Because Petitioner has not established cause and prejudice, or a fundamental miscarriage of justice, Grounds Two, Three, and Five are subject to an unexcused procedural default. Accordingly, they are dismissed on that basis.

### C.   Ground Four

In Ground Four, Petitioner alleges that his guilty plea was involuntary because he was not allowed sufficient time to consider the offer, and it was obtained at a time when "an offer of no worse than probation, attempted to be accepted, was still pending." (Dkt. 6 at 5). Ground Four's allegations may be read as stating two legally distinct claims: (1) defense counsel provided deficient representation by allowing Petitioner to plead guilty to an offer that involved prison time while the offer of "shock probation" still was available; and (2) the trial court coerced Petitioner into pleading guilty by denying him additional time to consider his options.

Respondents assert that Ground Four as a whole is unexhausted because it was not raised on direct appeal. (Dkt. 25-1 at 13-14). Respondents are correct that although Petitioner challenged the validity of his appellate rights waiver on direct appeal, he did not

argue that his plea was involuntary.  That said, Petitioner did raise, in the 440 motion, the allegations concerning defense counsel's alleged failure to inform him that the motion to enforce the "shock probation" plea offer was still pending and was a viable alternative to the plea offer he accepted.  The Court therefore construes this portion of Ground Four to be duplicative of the allegation in Ground Seven that was raised in the 440 motion and exhausted.  Ground Seven is discussed further below.

With regard to the other aspect of Ground Four involving Judge Fahey, the factual basis for this claim is apparent on the record.  Defense counsel informed the judge at the beginning of the appearance on August 20, 2013, that Petitioner desired additional time to contemplate ADA Van Doren's plea offer.  (8/20/13 Tr. at 2).  As noted above, Judge Fahey provided some additional time for Petitioner and defense counsel to meet that morning but declined to adjourn the proceedings further.  (*Id.* at 2-3).  Because Petitioner has not pointed to any off-the-record facts in support of this claim, there is no reason he could not have raised it on direct appeal.  *See*, *e.g.*, *McCormick v. Hunt*, 461 F. Supp. 2d 104, 110 (W.D.N.Y. 2006) (where the petitioner "assert[ed] that the trial judge was alerted to the fact that [the petitioner] allegedly did not understand the nature of the offenses to which he was pleading guilty, but nevertheless accepted the plea," it was "clear, based on the way that [he] has couched his claim, that the factual bases for the claim were apparent on the record" and he unjustifiably failed to raise it on direct appeal).  Thus, if Petitioner returned to state court and filed a motion to vacate raising the involuntariness claim, it would be subject to mandatory denial pursuant to C.P.L. § 440.10(2)(c).  *See McCormick*, 461 F. Supp. 2d at 110.  Accordingly, it will be deemed exhausted but procedurally defaulted.

As discussed above in connection with Grounds Two, Three, and Five, Petitioner has not demonstrated cause for, and prejudice resulting from, the default, or that he is actually innocent for purposes of the fundamental miscarriage of justice exception. Therefore, the Court dismisses as procedurally defaulted the portion of Ground Four asserting the involuntariness of Petitioner's plea based on the trial court's failure to allow him additional time to decide whether to plead guilty.

## VI.  MERITS OF THE AMENDED PETITION

### A.  Denial of Grand Jury Rights (Ground Six)

Petitioner asserts that he was denied a timely grand jury hearing and denied the right to testify before the grand jury due to purported misconduct by the prosecutor. (Dkt. 6 at 6). Respondents argue that Petitioner's voluntary guilty plea precludes him from challenging any constitutional errors that occurred before the entry of the plea. (Dkt. 25-1 at 16). Respondents further contend that to the extent Petitioner claims he was denied the right to testify before the grand jury, such a claim is not cognizable on habeas review because there is no federal right to a grand jury in a state criminal proceeding. (*Id.* at 16-17). For the reasons that follow, the Court agrees that Ground Six cannot provide a basis for habeas relief.

In *United States v. Mechanik*, 475 U.S. 66 (1986), the defendants, who were found guilty after a jury trial, attacked the constitutionality of their federal grand jury proceeding on direct appeal. The Supreme Court held that any error in the grand jury's determination of probable cause to indict was rendered harmless by the petit jury's subsequent verdict finding the defendants guilty beyond a reasonable doubt. *Id.* at 70.

- 30 -

In *Lopez v. Riley*, 865 F.2d 30 (2d Cir. 1989), a habeas petitioner who had been found guilty after trial challenged the propriety of his state grand jury proceeding based on prosecutorial misconduct and insufficiency of the evidence. The Second Circuit applied the reasoning of *Mechanik* to conclude that "claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Id.* Accordingly, the Circuit held the petitioner's grand jury claims were not cognizable on habeas review. *Id*.

"District courts in this circuit have held that *Lopez*'s and *Mechanik*'s 'reasoning applies equally to a conviction achieved by a plea of guilty.'" *Mayes v. Donnelly*, No. 03-CV-417, 2009 WL 2601106, at *10 (W.D.N.Y. Aug. 21, 2009) (quoting *Alston v. Ricks*, No. 01 Civ. 9862(GWG), 2003 WL 42144, at *7 (S.D.N.Y. Jan. 7, 2003) and collecting cases); *see also Lloyd v. Walker*, 771 F. Supp. 570, 576-77 (E.D.N.Y. 1991) ("Having admitted to the factual basis of the charges against him upon entering a plea of guilty, any error in the proceeding which led to his indictment is, as *Lopez v. Riley* teaches, rendered harmless, and is not a cognizable claim in a federal habeas proceeding."). Ground Six is dismissed as not cognizable in this § 2254 proceeding.

## B.   Invalid Waiver of Appellate Rights (Ground One)

Petitioner asserts that his waiver of appellate rights was invalid because the plea colloquy failed to establish his understanding that the right to appeal was separate and distinct from the rights automatically forfeited upon a guilty plea. (*See* Dkt. 6 at 5). Respondents contend that this claim is moot because Petitioner asserted it on direct appeal

and as noted above, the Appellate Division declined to enforce the waiver of rights.  (*See* Dkt. 25-1 at 17).

"The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."  *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).  A habeas petitioner's challenge to the validity of a waiver of appellate rights is rendered moot where, as here, the state appellate court does not enforce the waiver and proceeds to adjudicate the appeal.  *See*, *e.g.*, *Lanier v. Capra*, No. 21CV9307AJNJLC, 2022 WL 1024666, at *5 (S.D.N.Y. Apr. 5, 2022) ("Lanier's challenge to his appellate waiver is moot because the Appellate Division reached the merits of his excessive sentence ground and did not apply the appellate waiver." (citing *Jacob v. Capra*, No. 13-CV-4586 (RJD), 2016 WL 5349783, at *1 (E.D.N.Y. Sept. 23, 2016) (same)).  Ground One accordingly is dismissed as moot.

### C.    Ineffective Assistance of Trial Counsel (Grounds Four and Seven)

#### 1.    Legal Standard

"The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding."  *Lafler v. Cooper*, 566 U.S. 156, 165 (2012).  To establish that counsel was not functioning as the effective counsel guaranteed by the Sixth Amendment, a petitioner must satisfy the two-pronged test in *Strickland v. Washington*, 466 U.S. 668 (1984).  "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

First, the petitioner must show that his "attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best

practices or most common custom." *Richter*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690). "In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the [Supreme Court's] standard of attorney competence. . . ." *Hill*, 474 U.S. at 58. Second, the petitioner must show that counsel's "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. In the plea context, satisfying the "prejudice" element requires the petitioner to show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

### 2.    Application

Petitioner's ineffectiveness claim revolves entirely around Judge Merrill's alleged plea offer of "shock probation" to resolve all pending and future felony charges and defense counsel's errors in connection with that alleged offer. (*See* Dkt. 6 at 6). In essence, Petitioner contends that defense counsel's missteps caused Petitioner to forego an available plea involving no prison time and, instead, accept a plea with materially less favorable terms. More particularly, Petitioner asserts that defense counsel failed to accept Judge Merrill's alleged plea offer of "shock probation," despite Petitioner's direction to do so on October 17, 2012; failed to secure enforcement of that offer; and coerced Petitioner into pleading guilty by falsely communicating that the motion to enforce had been denied.

Petitioner presented his allegations of ineffective assistance in support of the 440 motion. (*See* SR: 630-54; 680-792). The 440 court denied the ineffectiveness claim on procedural grounds and on the merits. (*See* SR: 794-97). The 440 court's alternative rejection of the ineffectiveness claim as meritless and unsupported by the record is an

"adjudication on the merits" subject to the deferential standard set forth in 28 U.S.C. § 2254(d). *See Tatum v. Lempke*, 481 F. App'x 659, 662 n.4 (2d Cir. 2012) (noting that where state court "found . . . claim to be procedurally barred but also addressed its merits," federal habeas court "must afford AEDPA deference" to "state court's alternative holding on the merits," rather than review petitioner's claim *de novo*).

Respondents do not assert that the ineffective assistance claim is procedurally defaulted based on the 440 court's reliance on C.P.L. § 440.10(2)(c) as one ground for granting its dismissal.  Instead, Respondents argue that the 440 court's adjudication of the claim on the merits was neither contrary to, nor an unreasonable application of *Strickland*, and therefore Petitioner cannot satisfy 28 U.S.C. § 2254(d)(1).  (Dkt. 25-1 at 23-28).

Because the 440 court's resolution of the ineffectiveness claim involved a factual determination—that the supposed plea offer did not exist—AEDPA's provisions regarding factual questions, 28 U.S.C. § 2254(d)(2) and (e)(1), also are relevant.  Neither the Second Circuit nor the Supreme Court has "explain[ed] how these two provisions interact, specifically whether § 2254(e)(1) applies in every case in which a petitioner brings a challenge under § 2254(d)(2)."  *Cardoza v. Rock*, 731 F.3d 169, 178 n.5 (2d Cir. 2013) (collecting cases).  In *Cardoza*, because the petitioner could not meet § 2254(d)(2)'s "broader" unreasonableness standard, the Circuit did not consider § 2254(e)(1)'s "more stringent" clear and convincing evidence standard.  *Id.*  The Court will follow that approach here.

After independently reviewing the record, including the audio recording of the October 17, 2012 court appearance, the Court agrees that Judge Fahey reasonably

determined that the plea offer never existed.  Indeed, the *only* reasonable interpretation of the record is that there were three plea offers, none of which entailed the terms asserted by Petitioner.  The two offers that covered the felony charges being handled by ADA Van Doren *always* involved some amount of prison time.  The original offer, extended by ADA Van Doren in a letter dated August 8, 2012, was three to nine years' imprisonment in exchange for a guilty plea to one count of second-degree forgery.  (SR: 667).  ADA Van Doren indicated the offer would be withdrawn on August 31, 2012, and that if the offer was rejected, she would present the case to a grand jury.  (SR: 667; *also* SR: 669 (ADA Van Doren stated in memo dated 8/30/12, "I have offered 3-9 to cover all cases and did not offer [drug court]")).  Further, she stated that if Petitioner were indicted, the prosecution would seek consecutive sentences.  (SR: 667).  At some point, after Petitioner was indicted in 2013 for third-degree tax fraud, ADA Van Doren offered three and one-third to ten years' imprisonment in exchange for a guilty plea to one count each of second-degree grand larceny and third-degree criminal tax fraud.  (*See*, *e.g.*, 8/20/13 at 2).

The third offer, which was *never* mentioned at any of the court appearances involving the felony indictments, was mentioned only once, at the October 17, 2012 appearance.  As the caption of the transcript of that appearance makes clear, it concerned Petitioner's misdemeanor drug charges (Docket No. 2012-07423), not the felony indictments (Indictment No. 2012-1182-1/Index No. 12-1450; Indictment No. 2013-0354-1/Index No. 13-0400).  Notably, the prosecutor handling the felony cases, ADA Van Doren, was not at that appearance.  (SR: 705).

After Judge Merrill said that the current offer in the case before him was "shock probation," he asked about Petitioner's "stuff with [ADA] Beth [Van Doren]." (SR: 706). The defense replied that "[t]he offer from Beth is plea and agree to nine years." (*Id.*). Judge Merrill's question and defense counsel's answer clearly illustrate that the offer extended by ADA Van Doren to resolve the felonies was not "shock probation."

The 440 court quite reasonably determined, in light of the evidence presented, *see* 28 U.S.C. § 2254(d)(2), that Petitioner failed to prove there ever was a plea offer that involved no incarceration and would resolve all pending and future felonies. Petitioner cannot establish that defense counsel unreasonably failed to accept a non-existent plea offer at the appearance before Judge Merrill on October 17, 2012, or that Petitioner somehow was prejudiced. And defense counsel's inability to convince Judge Fahey to "honor" a non-existent plea offer is no reflection of his performance.

However, according to Petitioner the transcript of the October 17, 2012 appearance is not the full transcript. (SR: 733). He asserted, in a letter to appellate counsel in April 2016, that the "missing information, which was recorded on the record, was/is the basis of the letter addendum motion which Mr. Nordone drafted on 6-20-2013" (*id.*), i.e., the purported "shock probation" plea offer, but for some reason it did not appear in the transcript (*id.*). He swore that the recording would show that the "ADA offered no worse than shock probation for all pending charges (including felonies) and that this plea, if accepted[,] included all future charges." (SR: 734 (underlining in original)).

Respondents have submitted a CD containing an audio recording of the October 17, 2012 appearance.  The Court has listened to the recording, which begins moments before Petitioner's case is even called:

> Judge Merrill:        [Presumably addressing another defendant.] You obey
>                       my order.  Be nice.  Don't trash your stuff.  Don't break
>                       the law.
>
> Other voice:          [Unintelligible comments.]
>
> [Rustling papers, person sniffing.]
>
> Judge Merrill:        He's locked up?
>
> Other voice:          He is locked up.  He's locked up.
>
> Judge Merrill:        I know.  Okay.  Yup.

(CD: 0:00"-0:33").  At 0:34 seconds, Judge Merrill says the first line that appears in the transcript:  "All right this is Charles Grefer."  (SR: 705).  The remainder of the audio recording tracks the transcript verbatim and conclusively refutes Petitioner's claims that a portion of the transcript is missing.

Petitioner also contends that defense counsel coerced him into pleading guilty by falsely informing him that the June 20, 2013 motion to enforce had been denied when, in fact, the alleged "shock probation" plea offer remained pending at the time of the guilty plea on August 20, 2013.  Respondents indicate that there is no written order addressing the motion to enforce in the state court records.  (Dkt. 25-1 at 26).  And there is no mention of the motion to enforce in any of the transcripts apart from the June 20, 2013 transcript, when defense counsel asked Judge Fahey if he had gotten his letter regarding the appearance before Judge Merrill.  The Court is entitled to, and does, reject Petitioner's

uncorroborated and self-serving accusation against defense counsel as not credible.  *See Williams v. United States*, 481 F.2d 339, 346 (2d Cir. 1973) (stating that trial judge was "entitled to discount" the only evidence supporting the defendant's claim that the right to appeal had not been waived, namely, the defendant's "uncorroborated, untimely, self-serving testimony").

Furthermore, Petitioner has never stated that, but for defense counsel's deficient representation, he would have proceeded to trial instead of pleading guilty.  This is an additional reason why he cannot demonstrate prejudice as a result of defense counsel's performance.  *See*, *e.g.*, *United States v. Diaz*, No. 07 CR. 003 (BSJ), 2009 WL 4496052, at *4 (S.D.N.Y. Dec. 3, 2009) ("Diaz has failed to show prejudice—i.e., that but for counsel's erroneous advice, he would not have pled guilty and instead would have proceeded to trial.") (citing *Hill*, 474 U.S. at 59).

In sum, the 440 court's rejection of Petitioner's ineffectiveness claim was not based on an unreasonable determination of the facts in light of the evidence presented, *see* 28 U.S.C. § 2254(d)(2).  Nor was it contrary to, or an unreasonable application of the *Strickland* standard, *see id.* § 2254(d)(1).  Because he has not satisfied AEDPA's preconditions for relief, the Court denies habeas relief on the ineffective assistance claims in Grounds Four and Seven.

## **CONCLUSION**

For the reasons discussed above, the request for a writ of habeas corpus is denied and the amended petition (Dkt. 6) is dismissed.  The Court declines to issue a certificate of

appealability because Petitioner has failed to make a substantial showing of the denial of a

constitutional right.  *See* 28 U.S.C. § 2253(c)(2).

      SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      September 25, 2023
             Rochester, New York